JEFFREY L. HOGUE (SBN 234557)
jhogue@hoguebelonglaw.com
TYLER J. BELONG (SBN 234543)
tbelong@hoguebelonglaw.com
JULIE A. KEARNS (SBN 246949)
jkearns@hoguebelonglaw.com
**HOGUE & BELONG**
170 Laurel Street
San Diego, CA 92101
Tel:    (619) 238-4720
Fax:    (619) 238-5260

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA CORONADO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.; HECTOR ESCALANTE, individually; and DOES 1 through 50, inclusive,<br><br>Defendants. | **CASE NO.:** 3:23-cv-02123-LL-KSC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Hostile Work Environment – Sexual Harassment (Cal. Gov. Code § 12940(j));<br>2. Disparate Treatment (California Government Code § 12940(a));<br>3. Retaliation – California Government Code § 12940(h);<br>4. Negligent Infliction of Emotional Distress; and<br>5. Intentional Infliction of Emotional Distress<br><br>DEMAND FOR JURY TRIAL |

FIRST AMENDED COMPLAINT

Plaintiff ANA CORONADO, ("Ms. CORONADO," or "Plaintiff") by and through her attorneys, charge and allege as follows:

## THE PARTIES

1.     At all material times, Plaintiff was a resident of the County of San Diego, in the State of California.

2.      At all material times, Plaintiff was an employee of Defendant GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., a Virginia Corporation, ("Defendant" or "DYNAMICS") within the meaning of Government Code section 12940.

3.     At all material times HECTOR ESCALANTE ("ESCALANTE") was Plaintiff's supervisor within the meaning of California Government Code section 12926(t).

4.     At all material times, defendant DYNAMICS was registered as doing business within the State of California, and conducted business in the State of California, with business locations within San Diego County.

5.     The true names and capacities, whether individual, corporate, partnership, associate or otherwise of defendants DOES 1-50, inclusive, are unknown to Plaintiff who therefore sues these defendants by such fictitious names pursuant to California Code of Civil Procedure section 474.  Plaintiff will seek leave to amend this Complaint or file a DOE statement to allege the true names and capacities of DOES 1-50, inclusive, when the same are ascertained.  The DOE defendants, together with defendant DYNAMICS, are collectively referred to herein as "Defendants."

6.     Plaintiff is informed and believes, and thereon alleges, that Defendants are each responsible in some manner for one or more of the events and happenings that proximately caused the injuries and damages hereinafter alleged.

7.     Plaintiff is informed and believes, and thereon alleges, that Defendants knowingly and willfully acted in concert, conspired together and agreed among

FIRST AMENDED COMPLAINT

1   themselves to enter into a combination and systemized campaign of activity to cause

2   the injuries and damages hereinafter alleged, and to otherwise consciously and/or

3   recklessly act in derogation of Plaintiff's rights, and the trust reposed by Plaintiff in

4   each of said Defendants, said acts being negligently and/or intentionally inflicted.

5   Said conspiracy, and Defendants' concerted actions, were such that, to Plaintiff's

6   information and belief, and to all appearances, Defendants represented a unified body

7   so that the actions of one defendant was accomplished in concert with, and with

8   knowledge, ratification, authorization and approval of each and every other

9   defendant.

10          8.     Plaintiff is informed and believes, and thereon alleges, that each and

11   every defendant named in this Complaint, including DOES 1 through 50, inclusive,

12   is, and at all times mentioned herein was, the agent, servant, alter ego, and/or

13   employee of each of the other defendants and that each defendant was acting within

14   the course of scope of his, his or its authority as the agent, servant, and/or employee

15   of each of the other defendants.  Consequently, each and every defendant is jointly

16   and severally liable to Plaintiff for the damages sustained as a proximate result of

17   their conduct.

18

19                          **JURISDICTION AND VENUE**

20          9.     This Court has jurisdiction over this action pursuant to the California

21   Constitution, Article VI, Section 10, which grants the Superior Court "original

22   jurisdiction in all causes except those given by statute to other courts."  The statutes

23   under which this action is brought do not specify any other basis for jurisdiction over

24   Plaintiff's claims to another court.

25          10.    This Court has jurisdiction over all defendants because upon

26   information and belief, each defendant is a citizen of California, has sufficient

27   minimum contacts in California, and otherwise intentionally avails itself of the

28

California market so as to render this Court's jurisdiction over it consistent with traditional notions of fair play and substantial justice.

11.    Venue as to each defendant is proper in this judicial district pursuant to California Code of Civil Procedure section 395(a) and 395.5, because the acts herein complaint occurred in the County of San Diego, and Plaintiff's resulting injuries were sustained there.  Defendants either own or maintain restaurants and offices in the County of San Diego, transact business there, have an agent or agents within the County of San Diego, and are otherwise found within the County of San Diego.

## **ADMINISTRATIVE PREREQUISITES**

12.    On or around May 19, 2023, Plaintiff filed her charge of discrimination against DYNAMICS with the Department of Fair Employment & Housing ("DFEH") and received her right-to-sue letter against Defendants.  A true and correct copy of the aforementioned right-to-sue letter is attached as Exhibit "A."

13.    On or around December 1, 2023, Plaintiff amended her charge of discrimination with the DFEH to add co-respondent ESCALANTE.  A true and correct copy of the amended right-to-sue letter is attached as Exhibit "B."

## **FACTUAL ALLEGATIONS**

14.    In or around July 21, 2021, Ms. CORONADO began employment with DYNAMICS, a global aerospace company.  DYNAMICS, among other things, manufactures Gulfstream business jets, combat vehicles, nuclear-powered submarines, weapon systems, munitions, communication systems, as well as other products and services in business aviation.  Further, DYNAMICS specializes in IT solutions, C4ISR solutions, shipbuilding, and ship repair.

15.    Shortly after the beginning of her employment, Ms. CORONADO was subjected to harassing and discriminatory behavior from her direct supervisor, ESCALANTE.  Initially, ESCALANTE would schedule Ms. CORONADO to work

1 at less desirable locations and completely ignore Ms. CORONADO, making

2 completing her work duties more difficult than they needed to be. In addition,

3 ESCALANTE would make snide comments towards Ms. CORONADO, such as

4 telling her she was bad at her job and criticizing her inability to speak fluent English.

5      16.    ESCALANTE would harass at least three other female employees at

6 DYNAMICS in addition to Ms. CORONADO. ESCALANTE's harassment

7 gradually became more hostile, pronounced, and sexual over time. Over the course

8 of Ms. CORONADO's employment, it was apparent ESCALANTE's maltreatment

9 of Ms. CORONADO was because she was a woman.

10      17.    During the beginning of her employment with DYNAMICS, Plaintiff

11 started out as "Welder/Fitter," earning approximately $29.00 per hour at a shipyard

12 and occasionally on ships in San Diego.

13      18.    In order to retain Ms. CORONADO, DYNAMICS Project Manager,

14 Allen Shaffer ("SHAFFER") verbally promised CORONADO that she could request

15 an increase of wages if a different company offered her a higher rate of pay for the

16 same or substantially similar position. ESCALANTE was present during this

17 conversation and was well aware of the offer.

18      19.    Upon receiving a verbal offer from another company for a

19 "Fitter/Welder" position, Ms. CORONADO requested to ESCALANTE that she

20 wanted her wages increased in accordance with what was promised to her. In

21 response, ESCALANTE informed Ms. CORONADO that her wages would not be

22 increased because it would not be possible for Ms. CORONADO to earn more than

23 her co-worker who had more seniority.

24      20.    Later, Ms. CORONADO expressed to ESCALANTE her desire to

25 accept the above-referenced job offer due to the harassing conduct she was

26 experiencing at DYNAMICS. ESCALANTE requested that Ms. CORONADO stay

27 with the company and told her that her wages would be increased in March 2022 to

28 coincide when other employees' annual raises would be applied.

21.    While waiting for her raise, the harassing conduct from Mr. ESCALANTE became so frequent and stressful that Ms. CORONADO requested disability leave in November of 2022.  During Ms. CORONADO's leave, ESCALANTE told Ms. CORONADO's co-workers that she went on disability leave because she "was crazy."  When Ms. CORONADO returned from her disability leave, she found that her work tools were stolen from her, making her return to work and performing her job even more difficult.

22.    Upon Ms. CORONADO's return to work, the harassing conduct continued and increased in both frequency and severity.  ESCALANTE continued to call Ms. CORONADO "crazy," assigned her the least desirable jobs, and did not provide her the proper tools to complete her jobs that ESCALANTE assigned.

23.    When DYNAMICS employees received their wage increases in March 2022, Ms. CORONADO was shocked to learn that she had received a wage increase of only 37 cents per hour.  Ms. CORONADO also learned, by speaking with her co-workers, that most other employees she knew of had received wage increases between three to six dollars per hour.  Realizing that going to her supervisor, ESCALANTE, was pointless, Ms. CORONADO discussed with another supervisor, Albert Nino ("NINO"), that she had received an offer from another company, and that she wanted her wages increased in a manner consistent to what Mr. SHAFFER represented.  NINO told Ms. CORONADO, "let me see what I can do."  Ms. CORONADO, however, never heard back from NINO after that conversation.

24.    In September of 2022, Ms. CORONADO received an offer from another company in writing which would pay her $38.00 per hour if accepted.  Ms. CORONADO had a verbal conversation with her supervisor, ESCALANTE, and he told her that if she brought the offer to him, he would match it.  Ms. CORONADO then texted ESCALANTE proof of her offer.  ESCALANTE told her "Se ve muy falso. Umo de adveras," roughly translated with typos to mean: "That looks fake.  A real one."  Ms. CORONADO responded explaining that was the company email she

1  received offering her the new job.  ESCLANTE responded via text, "No no esta muy
2  chafa no hat otro major aparte eaa compania es de comida."  Roughly translated with
3  typos to mean: "No no that was lame/low-quality. There isn't a better one? That
4  company is a food company."  Later, Ms. CORONADO emailed the job offer to
5  ESCALANTE.  ESCALANTE, however, never responded.

6       25.    At a later date, Ms. CORONADO also sent the job offer to SHAFFER,
7  who was the person who had initially promised to match the other company's pay.
8  However, SHAFFER failed to respond to Ms. CORONADO as well.

9       26.    After receiving no response from ESCALANTE, Ms. CORONADO
10  emailed her offer to DYNAMICS superintendent, Darrell Dorman ("DORMAN").
11  DORMAN promised to "get the Out of Cycle raise started," yet Ms. CORONADO's
12  wages never increased after contacting DORMAN.

13       27.    ESCALANTE's duties included filing paperwork for his team which
14  detailed what work was performed, where it was performed, and which employee did
15  the work.  Every month, ESCALANTE would turn in this these sheets to the captain
16  of the boat where work was being performed.

17       28.    These aforementioned sheets would be double-sided.  One side of the
18  sheet would list the work that "Welders" performed, while the other side would list
19  the work that the "Fitters" performed.  Ms. CORONADO's daily tasks included
20  those which were assigned to both "Welders" and "Fitters," however, ESCALANTE
21  would only have Ms. CORONADO sign her name next to only the "Welder" duties
22  she performed for the day.  ESCALANTE would not have Ms. CORONADO sign
23  the opposite side to account for the "Fitter" duties she had performed.

24       29.    Suspicious, Ms. CORONADO asked ESCALANTE why she was not
25  signing her duties on the "Fitter" side of the sheet.  ESCALANTE refused to address
26  her concerns, and so Ms. CORONADO refused to sign any part of the sheet until she
27  would be able to sign for all the duties she had performed for the day, including her
28

1    "Fitter" duties.  This angered ESCALANTE and he insisted Ms. CORONADO again

2    that she had to sign.

3         30.    Ms. CORONADO then went to DYNAMICS' Structural Leadman,

4    Adrian Solis, ("SOLIS") asking why she was not signing for her "Fitter" duties that

5    she was performing each workday.  SOLIS recommended Ms. CORONADO report

6    ESCALANTE to Human Resources ("HR").  Shortly after, SOLIS informed Ms.

7    CORONADO that ESCALANTE had been signing *his* name instead of Ms.

8    CORONADO's name for "Fitter" work that *Ms. CORONADO* had been performing.

9    In other words, ESCALANTE was claiming credit for Ms. CORONADO's work.

10        31.    Only after speaking with SOLIS, ESCALANTE permitted Ms.

11   CORONADO to receive credit for the work she was performing.  Ms. CORONADO

12   signed the "Fitter" side of the sheet for the first time in approximately January 2023.

13        32.    When Ms. CORONADO asked ESCALANTE why she had not been

14   able to sign the "Fitter" side before this, he said "it's because you don't speak

15   English."

16        33.    ESCALANTE's harassing, derogatory, and retaliatory behaviors have

17   been prevalent throughout Ms. CORONADO's employment with DYNAMICS.  As

18   one example, per DYNAMICS' company policy, when an employee in Ms.

19   CORONADO's position performs "Fitter" duties, they are required to be paid

20   additional compensation.  Ms. CORONADO never received any additional

21   compensation because when ESCALANTE would fill out the daily performance

22   document, he would *exclude* the "Fitter" duties Ms. CORONADO had performed

23   that day so that he would not have to approve Ms. CORONADO for a wage increase.

24        34.    Ms. CORONADO reported the fact that ESCALANTE was falsifying

25   her daily job activities to HR.  To Ms. CORONADO's knowledge, however,

26   DYNAMICS has not reprimanded or otherwise counseled ESCALANTE for not

27   following established company policies and practices.

28

FIRST AMENDED COMPLAINT

35.     During Ms. CORONADO's employment, ESCALANTE would also make sexual advances toward Ms. CORONADO by asking her suggestive questions, such as whether Ms. CORONADO would ever date an older man, like himself, who Ms. CORONADO estimates to be approximately sixty (60) years old.

36.     Additionally, ESCALANTE would make crude and sexually charged comments when Ms. CORONADO requested work supplies for performing her job duties.  For example, one of Ms. CORONADO's job duties was building parts for boats.  On one occasion, Ms. CORONADO requested a cylindrical, hollow, metal tube, which was a necessary part for a boat mount she was building.  The tube part Ms. CORONADO requested needed to be at least six inches in length.  Upon making her request for the tube, ESCALANTE responded with a text message on "Whatsapp" stating: "De Perdida 6? U no la ando hacienda . . . o perate de que estas hablando????" (in English: "At least 6?  Oooh I can't make it happen . . . or wait what are you talking about?")  Given ESCALANTE's continuous and sexually harassing behavior, Ms. CORONADO immediately knew that ESCALANTE was referring to the length of his penis and was implying that he understood Ms. CORONADO's request to be asking for a 6-inch penis, and that ESCALANTE's penis was not long enough.

37.     ESCALANTE would also engage in other sexually harassing behavior directed toward Ms. CORONADO during the course of her employment at DYNAMICS, including, *inter alia*:

- Ms. CORONADO texted ESCALANTE informing him that she was going home for the day.  ESCALANTE replied, saying "Pa mi que te fuiste a hechar un rapidin tienes a tu marido en casa..," roughly translated to mean "I think you went home for a quickie your husband is home."  ESCALANTE then immediately texted Ms. CORONADO, "Tomas fotos," or "Take pictures;"

1                • ESCALANTE sent Ms. CORONADO a video of a dog attempting
2                   to have sexual intercourse with a chicken;

3                • ESCALANTE has asked if Ms. CORONADO multiple times via
4                   text whether she wanted to get drinks with him;

5                • ESCALANTE texted Ms. CORONADO a "meme" of actress
6                   Salma Hayek's cleavage that contained a caption of "Muchos ven a
7                   una Mexicana Yo veo una Rusa," roughly translated to mean "They
8                   often see a Mexican, I see a Russian," a Mexican phrase also meant
9                   to describe a sex position where the male inserts his penis between
10                  a woman's breasts;

11               • ESCALANTE solicited lewd photos of Ms. CORONADO in
12                  lingerie;

13               • ESCALANTE texted Ms. CORONADO a meme which said "Mi
14                  robaron la caja de viagra, pero mas que rabia, lo que siento es
15                  impotencia."  Roughly translated to mean "My box of Viagra was
16                  stolen, but more than anger, what I feel is helplessness;"

17               • ESCALANTE sent Ms. CORONADO an image of a male priest
18                  and groom kissing while the priest is grabbing the groom's
19                  buttocks;

20               • ESCALANTE sent Ms. CORONADO a meme of a crowded bus
21                  with the caption "Veniamos tan apretados que me rasque el culo y
22                  no era el mio" roughly translated to mean "We were so tight that I
23                  scratched my ass and it wasn't mine;"

24               • ESCALANTE texted Ms. CORONADO asking if she was wearing
25                  a mini skirt.  Upon replying "No," ESCALANTE replied,
26                  "Mmmtamano," meaning "Dammit;" and

27               • ESCALANTE texted a meme to Ms. CORONADO with the
28                  caption "Mi esposa encontro una tanga en el auto y le dije que era

10

mia.  La tarde de mierda que estoy pasando…," roughly translated to mean "My wife found a thong in my car and I told her it was mine.  What a shitty afternoon I'm spending..."

38.    All of the aforementioned text messages that ESCALANTE sent were unsolicited and unwelcome.

39.    ESCALANTE used his position of authority over Ms. CORONADO to emotionally torment her and intentionally cause her emotional harm.  In fact, Defendant ESCALANTE took great joy and amusement every time he made these disgusting comments to her – smirking or laughing every time he directed inappropriate comments towards Ms. CORONADO.  On every occasion, Ms. CORONADO found ESCALANTE's conduct repulsive and/or vile, and expressed great disgust on her face while ESCALANTE guffawed at his own harassing behavior.

40.    In addition to his verbal harassment, ESCALANTE would often grab or pinch Ms. CORONADO's stomach and/or hips while verbally humiliating her for "being fat" in front of other welders.  ESCALANTE engaged in this behavior on several occasions – ESCALANTE even continued to engage in this conduct *after* Plaintiff reported his behavior to DYNAMICS' HR.

41.    Not only was Ms. CORONADO subjected to her supervisor, ESCALANTE's, sexually harassing and discriminatory conduct, but Ms. CORONADO was also subject to her co-workers' behaviors which contributed to the already sexually hostile work environment.

42.    For example, Ms. CORONADO's co-worker, Marcos Grajeda ("GRAJEDA"), would often use his cell phone to surreptitiously record videos of Ms. CORONADO working.  GRAJEDA would only record Ms. CORONADO when she had her buttocks turned toward him.  In fact, GRAJEDA would record Ms. CORONADO's back side so often that many co-workers told Ms. CORONADO about GRAJEDA's behavior, including ESCALANTE.

FIRST AMENDED COMPLAINT

43.    On one occasion, Ms. CORONADO caught GRAJEDA recording her from behind.  When Ms. CORONADO confronted him about the recording, GRAJEDA became defensive, and said he would report her for "bad work" if she were to report the fact that GRAJEDA was trying to secretly record her to HR.

44.    GRAJEDA would additionally make lewd and sexually inappropriate comments to Ms. CORONADO during their shifts together.  For example, GRAJEDA once told Ms. CORONADO that the only reason she had her job was because she was "opening her legs" to ESCALANTE.

45.     In addition, GRAJEDA would frequently drink alcohol and become intoxicated at work.  On one occasion, GRAJEDA even invited Ms. CORONADO to drink with him after work.

46.    GRAJEDA would also bully Ms. CORONADO behind her back, telling her co-workers, for example, that Ms. CORONADO did not know how to weld. GRAJEDA would frequently degrade Ms. CORONADO by telling her she was not doing a good job, and that she was not good at her job.  GRAJEDA engaged in this behavior for no other reason than Ms. CORONADO was a woman.

47.    Moreover, GRAJEDA knew Ms. CORONADO could not complain to ESCALANTE about GRAJEDA's sexual harassment because ESCALANTE himself openly sexually harassed Ms. CORONADO without consequence.

48.    On January 8, 2023, Ms. CORONADO contacted HR about DYNAMICS' failure to match her offer, as well as the harassment and discrimination in the workplace due to the fact that she was a female.  Ms. Coronado mentioned how "[h]alf of [her] body was starting to become paralyze[d] due to all the stress that it had been causing having to deal with at work."

49.    On January 9, 2023, Ms. CORONADO reported ESCALANTE's conduct towards her saying "I feel discriminated against."  She further stated "I would like to have this issue kept confidential to avoid having more unnecessary issues with Mr. Escalante."

50.     On or about February 2, 2023, Ms. CORONADO reported ESCALANTE's discriminatory conduct once again to DYNAMICS' HR department via email.  Ms. CORONADO mentioned ESCALANTE's unprofessional behavior and her difficulty in working with and around him.   After making her complaint, Ms. CORONADO was retaliated against by ESCALANTE, as described below.

51.     On or around February 16, 2023, ESCALANTE approached Ms. CORONADO and told her that he knew she complained to HR about his sexual harassment.  ESCALANTE then said, "estas igual que Marcos [GRAJEDA], me la vas a pagar," which translates to "you're like Marcos [GRAJEDA], you are going to pay for this."  Immediately following the verbal interaction, Ms. CORONADO became physically sick and experienced extreme chest pains.  Ms. CORONADO then left work, went to the hospital, and was diagnosed as having a panic attack.

52.     The same day, after the incident described above, Ms. CORONADO emailed Melissa Carroll ("CARROLL") and requested disability leave due to the fact that she was fearful of what ESCALANTE would do to her.  Ms. CORONADO has not returned to work, per her psychologist's recommendations.  Ms. CORONADO has also been placed on multiple medications for insomnia, stress, pain, anxiety, and depression as a result of the sexual harassment and hostile work environment that she was subjected to during her employment at DYNAMICS.

53.     On February 20, 2023, Ms. CORONADO emailed, part of DYNAMICS' HR team, asking if it would be possible for her to work with a different crew, as to "reduce the risk of having contact with Mr. Escalante[.]"  In the same email chain, Ms. CORONADO expressed her concerns that "Mr. Escalante creates a hostile environment for [her] at work."

54.     On March 31, 2023, CARROLL emailed Ms. CORONADO telling her that the investigation had been completed and her case had been closed.  CARROLL told Ms. CORONADO that appropriate measures were taken to address the behavior.

But, CARROLL, nor anyone from DYNAMICS, ever explained what those "appropriate measures" allegedly taken were.

55.    In response to Ms. CORONADO's complaint, DYNAMICS' HR department offered to relocate Ms. CORONADO across the country to Virginia instead of relocating ESCALANTE.  Ms. CORONADO called CARROLL for more information and CARROLL informed her that she could be relocated to another location in Virginia "if she forgot about" everything regarding ESCALANTE.

56.    In summary, Ms. CORONADO's co-workers and supervisor have continuously sexually harassed, discriminated, and retaliated against Ms. CORONADO.  Further, DYNAMICS is now actively attempting to relocate Ms. CORONADO across the country in further retaliation for complaining about the illegal conduct she has endured.

57.    Based on information and belief, while Ms. CORONADO has been on disability leave, ESCALANTE has continued disparaging Ms. CORONADO and demeaning her when speaking with numerous common coworkers.  ESCALANTE has continued telling DYNAMICS employees that the reason she will not return to work is because Ms. CORONADO is "crazy."  Even after Ms. CORONADO reported ESCALANTE's behavior to HR, ESCALANTE continued his harassing and offensive conduct, including his efforts to embarrass Ms. CORONADO in front of all of the other welders, intentionally causing her further harm and suffering.

58.    ESCALANTE's references to Ms. CORONADO being "crazy" relate to Ms. CORONADO being a woman who was not open to the harassment inflicted upon her by ESCALANTE and GARAJEDA.

59.    ESCALANTE repeatedly asks about, among other things, Ms. CORONADO's whereabouts and condition.  ESCALANTE makes such inquiries to DYNAMICS employee Maria Isabelle Ruiz ("Ms. RUIZ") whom he knows has periodic contact with Ms. CORONADO.  When asking Ms. RUIZ about Ms. CORONADO, ESCALANTE will tell her that Ms. CORONADO is "not coming

back because she fucked up," and that she "bought her doctor," insinuating that Ms. CORONADO's symptoms are not legitimate.

60.    Further demonstrating the hostility in this work environment, ESCALANTE has gifted Ms. RUIZ lingerie.  Specifically, under false pretenses, ESCALANTE asked Ms. RUIZ for her email to "put in an application for the company directory."  Two days later, Ms. RUIZ received an email saying she needed to use a verification code to pick up a package at a mail locker.  ESCALANTE clarified that this email was for her, and that she should pick up the package.  She then picked up the package to find lingerie which was sent by ESCALANTE.

61.    Ms. RUIZ has not complained about ESCALANTE's behavior because, being her direct supervisor, she is afraid that she would be fired by ESCALANTE.

62.    ESCANATE has also made numerous sexual comments to Ms. RUIZ, such as asking if "how easy she is" (referring to how easy she is to sleep with), describing tubes (parts necessary for jobs) are hot (referring to them as a penis), and asking whether Ms. RUIZ would ever date an older guy like himself.

63.    In addition, ESCALANTE once, as a pretext, told another female employee, Jasmin (last name unknown) that she needed to paint at a different work site location.  Instead, ESCALANTE pressured Jasmin to accompany him to a bar, even after the employee protested and stated she did not drink and did not have her license with her.  ESCALANTE has also offered this female employee rides on his motorcycle and has said "if you want to ride something else that's up to you."

64.    On information and belief, at least three more female employees have complained to HR about ESCALANTE's inappropriate sexual communications and other behaviors.  In addition, at least two female employees have left DYNAMICS after reporting ESCALANTE's behavior, and not receiving any satisfactory resolution.  Furthermore, HR has taken no reasonable care to promptly prevent and correct ESCALANTE's sexually harassing behavior, whether via education, training, reprimand, discipline, or otherwise.  Thus, DYNAMICS is, and has been, aware that

1  ESCALANTE routinely subjects its female employees to sexual harassment but

2  allows ESCALANTE to perpetuate this hostile work environment with impunity.

3    65.    Based on information and belief, Ms. CORONADO's name already

4  appears on a list of employees who are on leave and will not return to DYNAMICS.

5  This list is maintained in DYNAMICS' payroll department and is available for all

6  active employees on DYNAMICS' "GDIT Connect" portal.  Ms. CORONADO

7  currently does not have access to this portal.

8    66.    ESCALANTE has openly bragged to Ms. RUIZ that he will never get in

9  trouble for his actions because he is very important to the company.  ESCALANTE

10  informed Ms. RUIZ that he has had four to five sexual harassment complaints

11  against him at DYNAMICS.  ESCALANTE has told Ms. RUIZ during these HR

12  interviews he falsely tells HR he is "gay" so that HR drops the investigation.

13    67.    While on leave, DYNAMICS has not only restricted Ms.

14  CORONADO's access to the company email portal system but has also begun

15  deleting emails from her inbox.  Ms. CORONADO first discovered her emails were

16  missing in approximately July 2023.

17    68.    These are some, and not all, of DYNAMICS' discriminatory, harassing,

18  retaliatory, or otherwise unlawful actions against Ms. CORONADO that have caused

19  her economic damages and severe emotional distress, among other injuries and

20  damages.

21

22    **<u>FIRST CAUSE OF ACTION</u>**

23    **For Hostile Work Environment Sexual Harassment in Violation of Cal. Govt.**

24    **Code § 12940(j)**

25    **(Against All Defendants)**

26    69.    Plaintiff refers to and incorporates by reference each and every

27  preceding and subsequent paragraph in this Complaint, as if fully set forth herein.

28

70.    At all times mentioned herein, California Government Code section 12940 *et seq.* was in full force and effect and was binding on all Defendants.  This section requires Defendants to refrain from sexually harassing any employee and to refrain from creating or allowing a hostile work environment based on sex or gender.

71.    At all material times, Plaintiff was an employee of DYNAMICS, within the meaning of Government Code section 12940.

72.    ESCALANTE and GRAJEDA were during all relevant times, agents for DYNAMICS.  ESCALANTE was additionally Plaintiff's supervisor within the meaning of Government Code section 12926.

73.    At all material times, Plaintiff was entitled to a work environment that was neither hostile nor abusive.

74.    Sex and gender are protected classes under the Fair Employment and Housing Act, Government Code sections 12940 *et seq*.  The above identified actions against Plaintiff were severe and pervasive.

75.    Defendants knew or should have known of the harassing behavior described above because both ESCALANTE and GRAJEDA constantly harassed Ms. CORONADO in front of managers and co-workers employed by DYNAMICS. Defendants, and each of them, knew or should have known of the aforesaid harassing actions because they personally witnessed and ratified said actions.

76.    Plaintiff found the work environment described herein to be severely hostile, abusive, and intolerable.

77.    A reasonable woman in Plaintiff's circumstances would have considered the work environment described herein to be severely hostile, abusive, and intolerable.

78.    At all material times herein, Plaintiff was performing her job in a satisfactory manner.

79.    As a direct and proximate result of the aforesaid harassing conduct by Defendants, and each of them, Plaintiff has been damaged in that she was wrongfully

and tortiously deprived of future wages, bonuses, benefits, and other compensation to which she was and remains entitled.

80.    As a further direct and proximate result of the aforesaid harassing conduct by Defendants, and each of them, Plaintiff has been deprived of the security, solace, and peace of mind for which she entered the employment relationship with Defendants, and has thereby suffered bodily harm, severe emotional distress, extreme fear of bodily harm, mental anguish, embarrassment, and humiliation, all to her special damage in an amount according to proof at trial.

81.    The outrageous conduct of Defendants, and each of them, described above was done with malice, fraud, and oppression and with conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Defendants, through its officers, managing agents and/or its supervisors, authorized, condoned, willfully ignored and/or ratified the unlawful conduct of all of the defendants named in this action.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all Defendants, and each of them, as prayed for below.

82.    As a further direct and proximate result of defendants' actions, Plaintiff is entitled to her attorney fees and costs pursuant to California Government Code section 12965(c)(6).

## **SECOND CAUSE OF ACTION**

### **Disparate Treatment in Violation of Cal. Govt. Code § 12940(a)**

### **(Against Defendant DYNAMICS)**

83.    Plaintiff refers to and incorporates by reference each and every preceding paragraph in this Complaint, as if fully set forth herein.

84.    Plaintiff was employed by Defendants at all relevant times.

85.    ESCALANTE and GRAJEDA were, during all relevant times, agents for DYNAMICS.  ESCALANTE was additionally Plaintiff's supervisor within the meaning of Government Code section 12926(t).

86.    Plaintiff has been sexually harassed, assaulted, demeaned, and in fear of termination from her employment based on the fact that she is a heterosexual woman, and also on the basis that she did not acquiesce to the demoralizing sexually violent conduct of her male supervisor and co-worker.  All of this occurred within the knowledge, presence, and or with notice to managerial employees of the Defendants.

87.    As a direct and proximate result of the aforesaid conduct by the aforementioned Defendants, Plaintiff has been damaged in that she has suffered great mental anguish, including fear for her physical and financial safety, constant worry, shock, humiliation, and other emotional distress all to her general and special damage in an amount according to proof at trial.

88.    The outrageous conduct of Defendants, and each of them, described above was done with malice, fraud, and oppression and with conscious disregard for plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Defendants, through its officers, managing agents, and/or its supervisors, authorized, condoned, willfully ignored and/or ratified the unlawful conduct of all of the other defendants named in this action.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all Defendants, and each of them, as prayed for below.

89.    As a further direct and proximate result of defendants' actions, Plaintiff is entitled to her attorney fees and costs pursuant to California Government Code section 12965(c)(6).

## THIRD CAUSE OF ACTION

### For Unlawful Retaliation in Violation of Cal. Gov. Code § 12940(h)

### (Against All Defendants)

90.    Plaintiff refers to and incorporates by reference each and every preceding and subsequent paragraph as if fully set forth herein.

91.    At all times herein mentioned, Plaintiff was employed by DYNAMICS.

92.    ESCALANTE and GRAJEDA were, during all relevant times, agents for DYNAMICS.  ESCALANTE was additionally Plaintiff's supervisor.

93.    When Ms. CORONADO followed DYNAMICS' established procedure to have DYNAMICS match the wage offered to one of its employees, DYNAMICS did not honor this policy but instead formally demoted Plaintiff.  Plaintiff was hired as a "Welder/Fitter."  After she presented her offer letter from another employer, she was demoted to only "Welder."

94.    To make matters worse, DYNAMICS and Plaintiff's manager ESCALANTE, not only failed to honor the wage matching policy, the company demoted Plaintiff yet still required her to regularly perform the duties of a "Fitter," which demanded a higher wage.

95.    Plaintiff's attempt to utilize the company's established employee retention / wage matching policy was a substantial motivating reason for DYNAMICS and supervisor ESCALANTE to reduce the wages of and demote Plaintiff.  All of the DYNAMICS and supervisor ESCALANTE's action in retaliation for Plaintiff's attempted utilization of this policy harmed Plaintiff.

96.    Additionally, as described up above, DYNAMICS retaliated against Plaintiff when Plaintiff lodged her complaints to DYNAMICS' HR regarding the sexual harassment.

97.    On or about February 2, 2023, Plaintiff made a report to DYNAMICS HR about the hostile work environment she was subjected to and the specific harassing acts perpetrated by ESCALANTE and GRAJEDA.

98.    As a result, DYNAMICS and Plaintiff's supervisor at DYNAMICS subjected her to even greater levels of harassment.  Inappropriate communications from ESCALANTE began to escalate and include explicit threats.

99.    Moreover, DYNAMICS' and ESCALANTE's retaliation in response to Plaintiff filing her sexual harassment with DYNAMICS' HR department directly resulted in Ms. CORONADO being threatened with relocation across the country.

FIRST AMENDED COMPLAINT

100.   ESCALANTE informed Plaintiff's coworkers that she would not be returning to employment.  ESCALANTE even indicated that the basis for her termination, or other discontinuation of employment, was because Plaintiff was "crazy."

101.   This retaliation occurred for no other reason than the fact that Plaintiff is a woman and because she refused to acquiesce to ESCALANTE and GARJEDA's sexual harassment and discrimination.

102.   As a direct and proximate result of the aforesaid retaliatory conduct by Defendants, Plaintiff has been damaged in that she was wrongfully and tortiously deprived of future wages, bonuses, benefits, and other compensation to which she was and remains entitled.

103.   Plaintiff was harmed by DYNAMICS and ESCALANTE's retaliation, harassment, that otherwise adversely affect the terms of her employment, including but not limited to, failure to promote or recognize the classification of work Plaintiff performs.

104.   As a further direct and proximate result of the aforesaid conduct by the aforementioned Defendants, Plaintiff has been deprived of the security, solace, and peace of mind for which she entered the employment relationship with Defendants, and has thereby suffered severe emotional distress, mental anguish, embarrassment, and humiliation, all to her special damage in an amount according to proof at trial.

105.   The outrageous conduct of Defendants, and each of them, described above was done with malice, fraud, and oppression and with conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Defendants, through its officers, managing agents, and/or its supervisors, authorized, condoned, willfully ignored and/or ratified the unlawful conduct of all of the other defendants named in this action.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all Defendants, and each of them, as prayed for below.

106.   As a further direct and proximate result of defendants' actions, Plaintiff is entitled to her attorney fees and costs pursuant to California Government Code section 12965(c)(6).

## FOURTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

107.   Plaintiff refers to and incorporates by reference each and every preceding and subsequent paragraph as if fully set forth herein.

108.   At all material times, Defendants, negligently and carelessly hired, trained, supervised, and retained its employees, ESCALANTE and GRAJEDA. Defendants breached their duty to exercise reasonable care and acted negligently and carelessly in the training and retention of ESCALANTE and GRAJEDA by failing to provide and ensure ESCALANTE and GRAJEDA's attendance of sexual harassment and/or discrimination prevention training including, but not limited to, training regarding the laws and regulations against harassment and discrimination on the job, as required by the Fair Housing and Employment Act.

109.   Defendants had actual or constructive knowledge of ESCALANTE and GRAJEDA's conduct, or lack thereof.  Defendants knew, or should have known, that ESCALANTE and GRAJEDA were sexual predators.  Said Defendants further negligently failed to investigate the background of ESCALANTE and GRAJEDA. At all material times, Defendants, including Defendants, also failed to take reasonable steps to protect Plaintiff from the sexually motivated actions and sexual biases of ESCALANTE and GRAJEDA.  Finally, Defendants negligently failed to fire or adequately discipline ESCALANTE and GRAJEDA despite the fact that Plaintiff had become a sexual victim of ESCALANTE and GRAJEDA while employed by Defendants.  Defendants had actual or constructive knowledge of the above-referenced conduct and ratified the same.

110.   Additionally, ESCALANTE and GRAJEDA were negligent in that they knew or should have known that their violent, sexually motivated conduct as hereinabove described was likely to cause Plaintiff to suffer severe emotional distress.

111.   Each of Defendants' aforementioned negligence harmed Plaintiff in that it caused her, among other things, severe emotional distress, anguish, fright, nervousness, anxiety, humiliation, shame, sleepless nights, depression, and a loss of earnings, and to Plaintiff's damage.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against ESCALANTE)

112.   Plaintiff refers to and incorporates by reference each and every preceding and subsequent paragraph as if fully set forth herein.

113.   Defendant DYNAMICS' supervisor, ESCALANTE, abused his position of authority over Plaintiff in that he made repeated unwelcome sexual advances, statements, and comments to Plaintiff while engaging in repeated harassing conduct.

114.   Defendant ESCALANTE directed his conduct at Plaintiff, and/or Defendant ESCALANTE engaged in this conduct in the presence of Plaintiff and ESCALANTE knew of Plaintiff's presence.

115.   Defendant ESCALANTE carried out these acts intentionally or unreasonably with the recognition that the acts were likely to result in significant mental anguish to Plaintiff.  In committing the outrageous acts heretofore described, Defendant ESCALANTE acted with the intent to inflict injury or severe mental anguish on Plaintiff or with the understanding that injury or severe mental anguish to Plaintiff was substantially certain to result.

116.   As a direct and proximate result of Defendant ESCALANTE's outrageous conduct as described herein, Plaintiff endured great mental anguish, constant worry, shock, humiliation, feelings of helplessness and desperation,

depression, anxiety, and other severe emotional distress, all to her general and special damages to be determined according to proof at trial.

117.   Defendant ESCALANTE's conduct was willful, despicable, malicious, knowing, and intentional.  Accordingly, Plaintiff demands an award of punitive and/or exemplary damages in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as follows:

1.   For a jury trial;

2.   For general damages;

3.   For special and compensatory damages including, without limitation, loss of past and present earnings and benefits, in a sum to be determined according to proof at time of trial;

4.   For punitive damages;

5.   For prejudgment and post judgment interest at the legal rate pursuant to law;

6.   For costs of suit;

7.   For reasonable attorney's fees pursuant to Government Code section § 12965(c)(6) and all other applicable statutes; and

8.   For such other and further relief as the Court may deem proper.

Dated: December 1, 2023                **HOGUE & BELONG**

By:   *s/ Jeffrey Hogue*_____
JEFFREY L. HOGUE, ESQ.
TYLER J. BELONG, ESQ.
JULIE A. KEARNS, ESQ.
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: December 1, 2023                **HOGUE & BELONG**

By:_____*s/  Jeffrey Hogue*_____
JEFFREY L. HOGUE, ESQ.
TYLER J. BELONG, ESQ.
JULIE A. KEARNS, ESQ.
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT

Exhibit "A"



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 19, 2023

RE:     **Notice of Filing of Discrimination Complaint**
        CRD Matter Number: 202305-20728419
        Right to Sue: Coronado / General Dynamics Information Technology, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 19, 2023

Ana Coronado

,

RE:     **Notice of Case Closure and Right to Sue**
         CRD Matter Number: 202305-20728419
         Right to Sue: Coronado / General Dynamics Information Technology, Inc.

Dear Ana Coronado:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective May 19, 2023 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Ana Coronado

CRD No. 202305-20728419

Complainant,

vs.

General Dynamics Information Technology, Inc.
321 Hillsdale Drive
Charlottesville, VA 22901

Respondents

**1.** Respondent **General Dynamics Information Technology, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Ana Coronado**, resides in the City of **,** State of **.**

**3.** Complainant alleges that on or about **May 19, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, sexual harassment-hostile environment, sexual harassment- quid pro quo.

**Complainant was discriminated against** because of complainant's sex/gender, sexual harassment- hostile environment, sexual harassment- quid pro quo and as a result of the discrimination was denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions,

-1-
*Complaint – CRD No. 202305-20728419*

Date Filed: May 19, 2023

CRD-ENF 80 RS (Revised 12/22)

denied any employment benefit or privilege, denied work opportunities or assignments, denied or forced to transfer.

**Additional Complaint Details:**

-2-

*Complaint – CRD No. 202305-20728419*

Date Filed: May 19, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Tyler Belong**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On May 19, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Diego, California**

Date Filed: May 19, 2023

CRD-ENF 80 RS (Revised 12/22)

## ATTACHMENT A

Complainant Ana Coronado ("Complainant" or "Ms. Coronado") at all relevant times worked for Respondent General Dynamics Information Technology, Inc. ("Respondent" or "Dynamics") as a Welder in the State of California.

Respondent Dynamics, according to its website, "is a global aerospace and defense company" that, among other things, manufactures Gulfstream business jets, combat vehicles, and nuclear-powered submarines, communications systems, and other products and services in business aviation; combat vehicles, weapons systems and munitions; IT and C4ISR solutions; and shipbuilding and ship repair.

On July 21, 2021, Ms. Coronado began working for Respondent as a Welder/Fitter for approximately $29.00 per hour. In order to retain employees, Dynamics had a policy where employees could request a wage increase if another company offered that employee a higher rate of pay. However, when Ms. Coronado presented Dynamics an offer letter from another company, Dynamics wholly refused to give Ms. Coronado a raise despite her having more experience than most of the other male employees in similar positions. Instead of giving her a raise, Ms. Coronado's supervisor, Hector Escalante, demoted Ana from Welder/Fitter to just "Welder," but continued to force Ms. Coronado to perform duties exclusive to "Fitters." Ms. Coronado's co-workers and supervisors also branded her with the nickname, "Anita," which generally means "Little Ana."

### Supervisor Hector Escalante:

Mr. Escalante is Ms. Coronado's direct supervisor, and is responsible for issuing performance reviews, discipline, and assigning job duties. Mr. Escalante is also in charge of filing paperwork for his team and each employee he supervises must sign a daily performance document with Mr. Escalante to report the work performed that day. Upon information and belief, when filling-out the daily performance document concerning Ms. Coronado, Mr. Escalante would *exclude* the "Fitter" duties Ms. Coronado had performed so that he wouldn't have to approve Ms. Coronado for a wage raise. (Per Dynamics company policy, when an employee in Ms. Coronado's position performs "Fitter" duties, they are required to be paid additional compensation). Ms. Coronado reported this conduct to Dynamics' Human Resources ("HR"), but, to Ms. Coronado's knowledge, Dynamics has not reprimanded or otherwise counselled Mr. Escalante about this behavior.

On occasion, Mr. Escalante would make sexual advances toward Ms. Coronado by asking her predatory questions, such as whether Ms. Coronado would ever date an older guy like Mr. Escalante. Mr. Escalante would also make sexually inappropriate comments when Ms. Coronado requested work supplies for performing her job duties. As one example, Ms. Coronado requested a tube part for a boat mount that measured at least six inches in length, and Mr. Escalante responded with a text message saying, roughly translated from Spanish to English, "At least 6? Oooh I can't make it happen . . . or wait what are you talking about?"[1] Given his continuous sexually harassing conduct, Ms. Coronado knew that Mr. Escalante was referring to

---

[1] In Spanish, the text reads "De Perdida 6? U no la ando hacienda . . . o perate de que estas hablando????"

the length of his penis and was implying that he understood Ms. Coronado to be asking for a 6-inch penis and that his penis was not large enough.

The above example is one of many inappropriate remarks Mr. Escalante made to Ms. Coronado. More examples include, but are not limited to:

- Mr. Escalante sending Ms. Coronado a video of a dog attempting to fornicate with a chicken;
- Mr. Escalante asking if Ms. Coronado wants to get drunk, dance, and have some fun;
- Mr. Escalante sending Ms. Coronado a "meme" of actress Salma Hayek's cleavage that contained a caption of "I masturbate to that," or words to that effect;
- Mr. Escalante soliciting lewd photos of Ms. Coronado in lingerie; and
- Mr. Escalante texting Ms. Coronado that someone stole his box of Viagra.

**Co-worker Marcos Grajeda:**

In addition to her supervisor's sexually harassing and discriminatory conduct, Ms. Coronado's co-workers also participate in sexually hostile work behavior. As one example, Ms. Coronado's co-worker, Marcos Grajeda, often tapes secret video recordings of Ms. Coronado working with his personal cellphone, makes lewd and sexually inappropriate comments to Ms. Coronado during their shifts together, and bullies Ms. Coronado behind her back by telling the other workers that Ms. Coronado does not know how to weld. Moreover, Mr. Grajeda knew that Ms. Coronado could not complain to Escalante about Grajeda's sexual harassment because Escalante himself openly sexually harassed Ms. Coronado. And, Mr. Grajeda knew Ms. Coronado could not complain to any other manager or HR about Escalante's or Grajeda's sexual harassment because Marcos himself had been retaliated against by Dynamics when Marcos previously reported to HR that Escalante had forged Mr. Grajeda's daily performance summaries as well.

Nevertheless, Ms. Coronado reported the above conduct to Dynamic's HR department. Thereafter, she was retaliated against by Escalante. On or around February 16, 2023, Mr. Escalante approached Ms. Coronado while she was resting at a table and told Ms. Coronado that he knew she complained to HR about Escalante's sexual harassment. Escalante further stated, "estas igual que Marcos [Grajeda], me la vas a pagar," which translates to "you're like Marcos [Grajeda], you are going to pay for this." On that same day, Ms. Coronado became physically sick to her stomach and experienced extreme chest pains. Ms. Coronado left work, went to the hospital, and was diagnosed with a panic attack.

To Ms. Coronado's knowledge, Dynamics has not reprimanded or otherwise counselled Mr. Grajeda about this behavior. However, Dynamics has since transferred Mr. Grajeda to a different team because of Mr. Grajeda's HR complaint against Escalante.

Now, Respondent's HR department is threatening to move Ms. Coronado across the country to Virginia instead of moving Mr. Escalante, despite the fact that Ms. Coronado is the victim who suffered the harassment and illegal discriminatory and retaliatory conduct.

In sum, Ms. Coronado's co-workers and supervisor have been continuously sexually harassing, discriminating and retaliating against Ms. Coronado for nearly a year, and Respondent is now trying to force her to move across the country in further retaliation for complaining of the illegal conduct she has endured.

These are some, but not all, of Dynamics' discriminatory, harassing, retaliatory or otherwise unlawful actions against Ms. Coronado that have caused her economic injuries, severe emotional distress, among other injuries and damages.

Exhibit "B"

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Ana Coronado                                                CRD No. 202305-20728419

                             Complainant,

vs.

General Dynamics Information Technology, Inc.
321 Hillsdale Drive
Charlottesville, VA 22901

Hector Escalante
,

                             Respondents

---

**1.** Respondent **General Dynamics Information Technology, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Hector Escalante** individual as Co-Respondent(s).

**3**. Complainant **Ana Coronado**, resides in the City of **,** State of **.**

**4**. Complainant alleges that on or about **May 19, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, other, sexual harassment- hostile environment, sexual harassment- quid pro quo.

**Complainant was discriminated against** because of complainant's sex/gender, other, sexual harassment- hostile environment, sexual harassment- quid pro quo and as a result of the discrimination was denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, other, denied work opportunities or assignments, denied or forced to transfer.

-1-

*Complaint – CRD No. 202305-20728419*

Date Filed: May 19, 2023
Date Amended: December 1, 2023

CRD-ENF 80 RS (Revised 12/22)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was denied hire or promotion, reprimanded, denied equal pay, suspended, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, other, denied work opportunities or assignments, denied or forced to transfer.

**Additional Complaint Details:** See Attachment A.

-2-

*Complaint – CRD No. 202305-20728419*

Date Filed: May 19, 2023
Date Amended: December 1, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Tyler Belong**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On May 19, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Diego, CA**

-3-

*Complaint – CRD No. 202305-20728419*

Date Filed: May 19, 2023
Date Amended: December 1, 2023

CRD-ENF 80 RS (Revised 12/22)

## ATTACHMENT A

Complainant Ana Coronado ("Complainant" or "Ms. Coronado") at all relevant times worked for Respondent General Dynamics Information Technology, Inc. ("Respondent" or "Dynamics") as a Welder in the State of California.

Respondent Dynamics, according to its website, "is a global aerospace and defense company" that, among other things, manufactures Gulfstream business jets, combat vehicles, and nuclear-powered submarines, communications systems, and other products and services in business aviation; combat vehicles, weapons systems and munitions; IT and C4ISR solutions; and shipbuilding and ship repair.

On July 21, 2021, Ms. Coronado began working for Respondent as a Welder/Fitter for approximately $29.00 per hour. In order to retain employees, Dynamics had a policy where employees could request a wage increase if another company offered that employee a higher rate of pay. However, when Ms. Coronado presented Dynamics an offer letter from another company, Dynamics wholly refused to give Ms. Coronado a raise despite her having more experience than most of the other male employees in similar positions. Instead of giving her a raise, Ms. Coronado's supervisor, Hector Escalante, demoted Ana from Welder/Fitter to just "Welder," but continued to force Ms. Coronado to perform duties exclusive to "Fitters." Ms. Coronado's co-workers and supervisors also branded her with the nickname, "Anita," which generally means "Little Ana."


### Supervisor Hector Escalante:

Mr. Escalante is Ms. Coronado's direct supervisor, and is responsible for issuing performance reviews, discipline, and assigning job duties. Mr. Escalante is also in charge of filing paperwork for his team and each employee he supervises must sign a daily performance document with Mr. Escalante to report the work performed that day. Upon information and belief, when filling-out the daily performance document concerning Ms. Coronado, Mr. Escalante would *exclude* the "Fitter" duties Ms. Coronado had performed so that he wouldn't have to approve Ms. Coronado for a wage raise. (Per Dynamics company policy, when an employee in Ms. Coronado's position performs "Fitter" duties, they are required to be paid additional compensation). Ms. Coronado reported this conduct to Dynamics' Human Resources ("HR"), but, to Ms. Coronado's knowledge, Dynamics has not reprimanded or otherwise counselled Mr. Escalante about this behavior.

On occasion, Mr. Escalante would make sexual advances toward Ms. Coronado by asking her predatory questions, such as whether Ms. Coronado would ever date an older guy like Mr. Escalante. Mr. Escalante would also make sexually inappropriate comments when Ms. Coronado requested work supplies for performing her job duties. As one example, Ms. Coronado requested a tube part for a boat mount that measured at least six inches in length, and Mr. Escalante responded with a text message saying, roughly translated from Spanish to English, "At least 6? Oooh I can't make it happen . . . or wait what are you talking about?"[1] Given his continuous sexually harassing conduct, Ms. Coronado knew that Mr. Escalante was referring to

---

[1] In Spanish, the text reads "De Perdida 6? U no la ando hacienda . . . o perate de que estas hablando????"

the length of his penis and was implying that he understood Ms. Coronado to be asking for a 6-inch penis and that his penis was not large enough.

Mr. Escalante used his position of authority over Ms. Coronado to emotionally torment Ms. Coronado and intentionally cause Ms. Coronado emotional harm.  In fact, Mr. Escalante took great joy and amusement every time he made these disgusting comments to Ms. Coronado – smirking or laughing every time he directed inappropriate comments towards Ms. Coronado.

The above example is one of many inappropriate remarks Mr. Escalante made to Ms. Coronado.  More examples include, but are not limited to:

- Mr. Escalante sending Ms. Coronado a video of a dog attempting to fornicate with a chicken;
- Mr. Escalante asking if Ms. Coronado wants to get drunk, dance, and have some fun;
- Mr. Escalante sending Ms. Coronado a "meme" of actress Salma Hayek's cleavage that contained a caption of "I masturbate to that," or words to that effect;
- Mr. Escalante soliciting lewd photos of Ms. Coronado in lingerie; and
- Mr. Escalante texting Ms. Coronado that someone stole his box of Viagra.

In addition to his verbal harassment, Mr. Escalante would often grab or pinch Ms. Coronado's stomach and/or hips, and he would humiliate her for being fat in front of other welders.  Mr. Escalante engaged in this behavior on several occasions – Mr. Escalante even continued to engage in this conduct after Ms. Coronado reported his behavior to Dynamics' HR.

**Co-worker Marcos Grajeda:**

In addition to her supervisor's sexually harassing and discriminatory conduct, Ms. Coronado's co-workers also participate in sexually hostile work behavior. As one example, Ms. Coronado's co-worker, Marcos Grajeda, often tapes secret video recordings of Ms. Coronado working with his personal cellphone, makes lewd and sexually inappropriate comments to Ms. Coronado during their shifts together, and bullies Ms. Coronado behind her back by telling the other workers that Ms. Coronado does not know how to weld. Moreover, Mr. Grajeda knew that Ms. Coronado could not complain to Escalante about Grajeda's sexual harassment because Escalante himself openly sexually harassed Ms. Coronado. And, Mr. Grajeda knew Ms. Coronado could not complain to any other manager or HR about Escalante's or Grajeda's sexual harassment because Marcos himself had been retaliated against by Dynamics when Marcos previously reported to HR that Escalante had forged Mr. Grajeda's daily performance summaries as well.

Nevertheless, Ms. Coronado reported the above conduct to Dynamic's HR department. Thereafter, she was retaliated against by Escalante.  On or around February 16, 2023, Mr. Escalante approached Ms. Coronado while she was resting at a table and told Ms. Coronado that he knew she complained to HR about Escalante's sexual harassment. Escalante further stated, "estas igual que Marcos [Grajeda], me la vas a pagar," which translates to "you're like Marcos [Grajeda], you are going to pay for this." On that same day, Ms. Coronado became physically sick to her stomach and experienced extreme chest pains. Ms. Coronado left work, went to the hospital, and was diagnosed with a panic attack.  After Ms. Coronado reported Mr. Escalante's

behavior to HR, Mr. Escalante continued his harassing and offensive conduct, including his efforts to embarrass Ms. Coronado in front of all of the other welders.

To Ms. Coronado's knowledge, Dynamics has not reprimanded or otherwise counselled Mr. Grajeda about this behavior. However, Dynamics has since transferred Mr. Grajeda to a different team because of Mr. Grajeda's HR complaint against Escalante.

Now, Respondent's HR department is threatening to move Ms. Coronado across the country to Virginia instead of moving Mr. Escalante, despite the fact that Ms. Coronado is the victim who suffered the harassing and illegal discriminatory and retaliatory conduct.

In sum, Ms. Coronado's co-workers and supervisor have been continuously sexually harassing, discriminating and retaliating against Ms. Coronado for nearly a year, and Respondent is now trying to force her to move across the country in further retaliation for complaining of the illegal conduct she has endured.

These are some, but not all, of Dynamics' discriminatory, harassing, retaliatory or otherwise unlawful actions against Ms. Coronado that have caused her economic injuries, severe emotional distress, among other injuries and damages.